Violet G. S. Duncan *v.* Milford Savings Bank et al.

Maltbie, C. J., Brown, Jennings, Dickenson and Shea, Js.

Argued January 6—decided February 26, 1948.

*Vincent P. Dooley* and *Isadore Chaplowe,* for the appellant (plaintiff).

*Robert C. Stoddard,* with whom, on the brief, was *Harold C. V. Eagan,* for the appellee (named defendant).

*Nathan G. Sachs,* for the appellee (defendant John F. Carroll, Jr.).

*Marvin C. Gold,* with whom, on the brief, was *Annette P. Gold,* for the appellee (defendant Leo F. Shurman).

MALTBIE, C. J. This action is before us upon an appeal by the plaintiff from a judgment for the defendants. The plaintiff, who had owned certain land the first mortgage upon which had been foreclosed, claims that she is entitled to relief, in the nature of a redemption of the premises, against an attaching creditor, a party to the foreclosure, and against one to whom he had assigned his interest and who had redeemed the property from the mortgage.

As regards this issue, the material facts are not disputed. The plaintiff owned certain real estate in West Haven which was subject to a mortgage to the defendant savings bank. In May, 1945, the bank commenced an action to foreclose the mortgage. The defendant Shurman was made a defendant by reason of an attachment placed on the premises in an action in which he was plaintiff and the plaintiff in this action was defendant. The holder of another mortgage, Mathilde F. Porter, was also made a defendant. In June, 1945, a judgment of foreclosure was entered which fixed the day of redemption for the present plaintiff as December 17, 1945, and the days next succeeding for the other defendants. Thereafter, the judgment of foreclosure was four

times opened and new judgments extending the period for redemption were rendered; in the last, the day of redemption for the plaintiff was fixed as the second Monday of July, that is July 8, 1946, and, for the other defendants, the next succeeding days. Each judgment provided that if the present plaintiff or either of the other defendants in the action should fail to redeem she or he should be "forever barred and foreclosed of all equity to redeem" the premises, and that, upon payment of the debt by any incumbrancer after subsequent parties in interest had been foreclosed, the title to the premises should "vest absolutely" in that incumbrancer, subject to any preceding unpaid incumbrances. The plaintiff did not appeal from the judgment. On or about March 20, 1946, while the action was pending, she and Shurman mutually released each other from certain claims involved in the action in which the attachment had been made, and Shurman released the attachment. Shortly thereafter, he again attached the property in another action against the plaintiff, and subsequently, on his application, the judgment was opened and he was given a redemption day. The plaintiff failed to redeem the premises on the day of redemption fixed for her. On July 10, 1946, the day of redemption fixed in the judgment for Shurman, he executed an assignment of any right or interest he had in the property to the defendant Carroll; they went to the office of the attorney for the bank; Carroll there paid the attorney the whole amount due on the mortgage and paid Shurman the agreed consideration for the assignment. On the same day a certificate of satisfaction of the mortgage debt, signed by the attorney for the bank, was filed in court.

Any consideration of the case before us must start

with our decision in *Newman* v. *Gaul*, 102 Conn. 425, 129 A. 221. In that case Newman, the plaintiff, who had owned property subject to a mortgage, sought relief in an independent action after a judgment foreclosing the mortgage had been rendered. In the foreclosure action certain creditors who had attached the property were made defendants and they were given redemption days. The judgment, as appears from the file of the case, which we have examined, provided that, upon payment of the debt and costs by any incumbrancer after subsequent parties had been foreclosed, title to the property should vest absolutely in him, subject to any preceding incumbrances, and that Newman should deliver possession of the premises, in default of redeeming the premises himself, to the mortgagee or any incumbrancer who did redeem. Gaul, the defendant in the second action, purchased the interests of the attaching creditors, and those interests were assigned to him before the actions in which the attachments were made had gone to judgment; it did not appear that judgments in them had ever been rendered. When the law day of one of the attaching creditors came, Gaul, as assignee of his interests, redeemed the property, filed a certificate of foreclosure and took out execution for possession. One of the claims for relief in the second action was that the plaintiff, owner of the equity in the property when the foreclosure action was brought, was entitled to redeem it from Gaul by paying the amount due him. In the course of the opinion we said (p. 432): ". . . Newman failed to redeem on his law-day, . . . and in accord with the legal and proper provisions of the judgment, he and his heirs and assigns were foreclosed and forever barred of all equity to redeem, and this equity thus cut off, could not be recalled."

We further said (p. 435) that Gaul by his assignment from the attaching creditor obtained all the rights to enforce the claim which the attaching creditor would have had except for the assignment, and that this included the right to redeem the property, which Gaul might assert either in his own right or that of his assignor. We held that title to the premises had vested in Gaul.

Section 5088 of the General Statutes provides: "In actions of foreclosure, when a judgment of strict foreclosure shall be rendered and there shall be subsequent incumbrances, the judgment may provide that, upon the payment of the debt and costs by any incumbrancer, after all subsequent parties in interest have been foreclosed, the title to the property shall vest absolutely in such incumbrancer making such payment, subject to such unpaid incumbrances, if any, as precede him." This statute does not require that the judgment shall vest title in an incumbrancer who redeems, but it authorizes such a judgment. The lien of an attaching creditor is subject to defeasance in many ways, such as a release or a failure to obtain judgment. It may be that a judgment of foreclosure may, as regards the lien of an attaching creditor, condition the title secured by him through redemption by subjecting the property in his hands to a right of the mortgagor to redeem it from him should he fail to make good the lien by prosecuting to effect the action in which the attachment was made. But the time for a mortgagor to make that claim is in the foreclosure action. If he fails to do so or if, when made, the claim is overruled and he does not appeal, the provision in the judgment barring him from asserting any future claim to redeem, on his failure to do so within the period allowed in that action, and vesting title in

any incumbrancer who does redeem becomes as to him res adjudicata. *Jackson* v. *Grosser,* 218 Ill. 494, 498, 75 N. E. 1032. The plaintiff relies upon a statement in *Lyon* v. *Sanford,* 5 Conn. 544, 549 (1825) where, in speaking of the rights of an attaching creditor made a party defendant in a foreclosure action, we said: "Should the attaching creditor, for the purpose of preserving his lien, be obliged to redeem before he has obtained judgment, and levied his execution, he may still levy his execution, and obtain complete title." That was, at most, an obiter dictum; § 5088 of the General Statutes was first enacted in 1895; Public Acts, 1895, Chap. 277; and any implication that an attaching creditor who redeems gets only a qualified title has no application where, as in this case, he has become vested with full title by a proper judgment.

The plaintiff makes another claim which is by no means clearly stated in her brief but which we understand to be that certain transactions between her and the bank before the day fixed for redemption by her amounted in effect to a redemption or suspension of the time for redemption, and that Carroll, who, she claims, was not a bona fide purchaser for value, had no greater rights than the bank would have had to hold the property against her. The court has found that on April 30, 1946, the plaintiff offered the bank $1300 to be applied on her mortgage debt, that it refused to accept the payment, that she then left the money with the bank, and that it gave her a cashier's check representing the money payable to her order. She seeks to add other facts to the finding which, in brief, are that she arranged with the bank to make periodic payments to it, including an attorney's fee; that the bank was ready to continue the mortgage upon her payment of all sums due, court

costs, and attorney's fees; that the reason the bank refused the sum of $1300 was because the matter was in the hands of its attorney; and that she was ready, able and willing to carry out these arrangements. That any definite arrangement was made with the bank for periodic payments or for continuing the mortgage is directly contradicted by the bank officer with whom the plaintiff testified she dealt; we are not asked to add to the finding that she did in fact make any payments to it under such an arrangement, nor is there any evidence to that effect. There was no agreement with the bank which would give to the plaintiff any other rights than those she had under the foreclosure judgment, and therefore there were no equities of that nature with which Carroll could be charged even if he was not a bona fide purchaser. Apart from this claim, the plaintiff, so long as the judgment of foreclosure stands barring her from all equity of redemption, is in no position to attack the bona fides of the assignment. Nor is there any basis for a claim that either Carroll or the bank was so unjustly enriched that the plaintiff is entitled to relief on that ground.

The position of the plaintiff is reduced to this: In this action she is seeking equitable relief against the enforcement of the judgment of foreclosure, and the fact upon which she relies is that she mistakenly believed that her redemption day was not July 8 but July 17, and that she could not redeem before that day. The judgment was opened the last time upon a motion made by the plaintiff which asked that the day of redemption for her be set as the second Monday of July, 1946. The court has found as follows: On May 17, 1946, the motion was granted forthwith; the plaintiff's attorney was present at the hearing; within three days thereafter he telephoned her that

the motion had been granted and her period for redemption extended; she understood that he informed her that her day for redemption was July 17; neither she nor he received any copy of the new judgment or notice of the day for redemption fixed in it; she received no information as to that day from anyone else and believed it to be July 17; she did not learn until July 15 that the day had passed; her attorney did not examine the file to ascertain the day. It is significant that the trial court has not found that the attorney did in fact inform the plaintiff that the redemption day for her was July 17; that the omission of this finding was intentional is suggested by the evidence; she did testify that he did so inform her, but his testimony did not support her in that regard, and other circumstances suggest reasons why she might have misunderstood the day. Nor can we add to the finding, as requested, a statement that the plaintiff believed that it was necessary to wait until the redemption day to pay the amount due the bank; she did so testify, but her credibility was for the court, and other evidence suggests a different reason for her waiting until that day.

The plaintiff founds her claims for relief upon her misunderstanding as to the final redemption day. "Equity will not, save in rare and extreme cases, relieve against a judgment rendered as the result of a mistake on the part of a party or his counsel, unless the mistake is 'unmixed with negligence,' or . . . 'unconnected with any negligence or inattention on the part of the judgment debtor,' or . . . 'when the negligence of the party is not one of the producing causes.'" *Jarvis* v. *Martin,* 77 Conn. 19, 21, 58 A. 15; *Hoey* v. *Investors' Mortgage & Guaranty Co.,* 118 Conn. 226, 231, 171 A. 438; *Palverari* v. *Finta,* 129 Conn. 38, 43, 26 A. 2d 229.

The plaintiff could at any time have ascertained from her attorney, the bank or the court records the exact day when her time to redeem expired. The most she can claim is that her misunderstanding was due to a failure on the part of her attorney to give her definite or clear information when he telephoned her within three days after the motion was granted; but, if that is so, he was clearly guilty of negligence in thus affording a basis for misunderstanding on her part. The plaintiff and her attorney could not be so far absolved from inattention and negligence as to afford a basis for the equitable relief she claims.

The plaintiff assigns as error the admission over her objection of three questions; no answers to them appear in the record, and these rulings present nothing which we can properly consider. *Jenkins* v. *Reichert*, 125 Conn. 258, 264, 5 A. 2d 6. Two other questions admitted during the cross-examination of the plaintiff were objected to as not within the scope of the direct examination and as irrelevant; the finding contains no statement of the matters dealt with in the direct examination, and the first objection presents nothing we can review; *State* v. *Mosca*, 90 Conn. 381, 390, 97 A. 340; and the answers given, even if irrelevant to any issue in the case, were so immaterial to the grounds upon which we have decided it as to make the rulings harmless. The remaining ruling, even if erroneous, is of too little consequence to justify a new trial.

The trial court requested the plaintiff at the conclusion of the trial to make her claims of law in writing, in accordance with § 157 of the Practice Book, but, although it subsequently granted her several extensions of time within which to do so, she did not file them. A statement of the claims of law made at the trial is a necessary part of a finding. Practice

Book § 342. The trial court would have been justified in refusing to make any finding in view of the plaintiff's failure to file the statement requested. But as it did so, we have considered the case as presented to us.

There is no error.

In this opinion the other judges concurred.